Are the attorneys for Cynthia Williams and the doctors and reproductive health associates. Are you present? Are you here? Yes. Are you ready? Okay. Madam Clerk, please call the next case. Why don't you have a seat? Okay. Will the attorneys, as soon as you get situated, please step up to the podium. Tell me your names, who you represent, and approximately how long your argument will take. Good morning, counsel. Good morning, your honors. My name is Beverly P. Spearman, and I represent the appellee plaintiffs, Cynthia, Kenneth, and Kennedy Williams. Good morning. Good morning, your honors. Karen DeGrand on behalf of the defendants appellants, Brian Rosner, M.D., and reproductive health associates, S.C. Ms. Spearman, how long will your argument take? I would think between 10 and 12 minutes or so. Okay. Ms. DeGrand, how long do you plan to argue? Depending on how much we chat, your honor, I would say perhaps 10 to 15 minutes, and I'd like to reserve a few minutes for rebuttal. Very good. Okay. Why don't you proceed with your argument? I will, your honor. We are rushing you. Do you need a couple of minutes? I'm fine, your honor. I'm ready to proceed. Let's proceed. Again, good morning, your honors, counsel. Karen DeGrand on behalf of the defendants appellants. May it please the court. The certified question posed by the trial court asks this court to address the topic of birth-related torts and to consider the ramifications of expanding the damages that are available for wrongful pregnancy claims. On the defense side, we believe that our position is consistent with the body of established law and that the plaintiffs are urging this court to move into uncharted territory. The trial judge certified the question posed to the court after denying the defendants' motion to dismiss count one of the plaintiff's second amended complaint. The plaintiffs sued Dr. Rosner and the entity after a failed tubal ligation. Mrs. Williams became pregnant, proceeded with the pregnancy, and had a daughter, Kennedy, who's been diagnosed with sickle cell disease. The defendants challenged the aspect of the damage claim in count one to the extent that the plaintiffs seek damages that are not recognized as recoverable in any Illinois reported decision in a wrongful pregnancy case. The trial judge, however, felt that it was appropriate to deny the motion to dismiss based on his conclusion that no decision addressed the specific allegations that were contained in the plaintiff's second amended complaint. Well, doesn't Williams v. University of Chicago specifically leave the question open? I think the court leaves a question open, yes, Your Honor, about the impact of the physician being advised by the plaintiffs that they have an extraordinary need to avoid a specific congenital abnormality. And isn't that what, I mean, we're talking about the sufficiency of the complaint, isn't that what the plaintiffs allege here? Well, I guess I would not necessarily concede that there is alleged an extraordinary need, but I don't believe that what the court said was that this, including those types of allegations, necessarily would state a cause of action. I think the court, I'm sorry, Your Honor. What would you say is an extraordinary need? Frankly, Your Honor, I don't believe that the allegations of this complaint establish an extraordinary need when you look at all of the circumstances that are alleged. But the basis of our questioning of this is that taking, you know, analyzing the allegations within the construct of proximate cause, the fact that there is an allegation that says we told the physician that we wanted to, we want, basically the purpose of the tubal ligation was to avoid this specific problem. And I think, I don't believe that the court said you necessarily have stated a cause of action or you necessarily have a claim within the body of law if you make an allegation saying, hey, we told this doctor we want to avoid this type of congenital problem. I think that the court left the question open. It was an issue. Then tell me, you say those allegations don't establish proximate cause. Correct. Because Dr. Rosner did not cause Kennedy to be born with sickle cell disease. But the same can be true in a wrongful birth case where the physician fails to advise the parents of the likelihood of a genetic abnormality. The physician doesn't cause the genetic abnormality, but the court recognizes that the failure to tell the parents about it deprived them of the opportunity to make the decision. And so the physician is liable in proximate cause for the extraordinary costs of raising that child. Well, therein, Your Honor, I believe lies the distinction. And that is the distinction between wrongful birth cases and wrongful pregnancy cases. I think it's if when in looking at the, you know, the body of law, and I'm sure the court has looked at these cases as carefully as have I, that the injury that's alleged and we look to see whether the negligent conduct is proximately, you know, proximately causes the injury alleged and the damages that flow from that injury, we have a different injury that's alleged in the wrongful birth situation than we do in the wrongful pregnancy situation based on all of the case law. So in the wrongful birth situation, the injury that is recognized in the case law is the parents have been. For the child. I'm sorry, Your Honor. For the child. Well, no. No, I disagree with that, Your Honor. The injury, it's not an injury of the child. Well, that's off the table, I'd respectfully submit to the court. Based on the analysis of the wrongful life, based on that that's a prohibited claim, based on the concept that the courts in Illinois do not recognize as a compensable injury the birth of a healthy child. No matter if you have a wrongful birth situation, no matter if you, well, of course you wouldn't in that situation, but no matter if you have a wrongful life situation or a wrongful pregnancy situation. And that's, you know, the wrongful pregnancy situation, clearly the point is to stop all pregnancies. But to go back to the distinction between wrongful birth and why we can have these types of damages available in that case versus a wrongful pregnancy, the injury is not to the child. The injury is to the parents. The injury is that the parents are deprived of the opportunity to make an informed decision about whether to proceed with the pregnancy, and that's the Simonet case, or whether to attempt to conceive, which is the Clark case. So that's the injury. And the court. And so here the parents had made a decision. They had made a decision that a 25% risk of another child with sickle cell disease is unacceptable to us, and we don't want to take it. And so the same as the hypothetical you're positing, the physician's conduct in negligently performing the sterilization procedure deprived them of the decision they had already made. I disagree, Your Honor. I think the way the courts have analyzed these cases is to say that the injury under Cockrum, under Williams, under both this court's decision in Williams and the Supreme Court's decision in Williams, the injury is the fact that the plaintiff becomes pregnant. That's much different than the injury in the wrongful birth situation, because the plaintiff in the wrongful pregnancy situation learns of the problem at the time that she becomes pregnant. She's not deprived of the opportunity to decide whether to go forward with the pregnancy or not. The wrongdoing, so to speak, of the doctor, and the alleged wrongdoing, I'll submit, but we're on the pleadings here, in the wrongful birth situation is negligent testing or negligent counseling. You came to me and said, I want to know what the chances are of my child having hemophilia in Simonet. And if you give me the wrong information, the causal result of that is I don't make the decision to go forward. I have a child with these problems. That's not what is involved in the wrongful pregnancy situation. In the wrongful pregnancy situation, the damage that the courts have recognized is that the wife, the mother becomes pregnant in these situations, but the damages are cut off at that point. We know that from Cochrane. Now, to say that there is a difference here because somebody has been told, my motivation here is that I want to, I don't like the odds, the 75% odds of having a child that's healthy, regardless of these risk factors. I don't want to have any more children. Let's change the fact pattern. And I think this somewhat illustrates even more strongly that there is no causal relationship, regardless of that information. The fact that the doctor is advised of the reasons for the plaintiff or for the parents to want to seek a tubal ligation doesn't increase the likelihood of the harm occurring as a result of the negligence. But it's a question of foreseeability. What courts have said is in the absence of any allegation or proof that a specific genetic abnormality was discussed with the doctor, you would say that any abnormality would be foreseeable, and we're not willing to do that. We're not going to impose that burden on the medical profession. But in a foreseeability context where a patient comes to a doctor and says, this is the genetic abnormality I want to avoid, and this is why I'm doing what I'm doing, and why I'm coming to you. And so the doctor knows, has notice of this specific abnormality, desiring not to have another child with sickle cell disease, and it's foreseeable that if he negligently performs the procedure, that's what's going to happen. The fact that the doctor is informed of the reasons, however, Your Honor, does not increase the risk. No. The doctor then knows, has another piece of information. So let me change the fact pattern a little bit, and that's that I think maybe supports the lack of connection that I'm trying to articulate here. Let's say that the parents come in and say, we want to go forward with sterilization, we want to go forward with a tubal relegation, because we're very concerned that our child would suffer from X syndrome, and X syndrome is a one in a million chance. Okay, so now the doctor knowing that, the doctor's not going to do anything differently, and that's recognized in the Williams appellate decision, where the court said that the doctor's knowledge of the history of these other problems really has nothing to do with anything. It's not going to change anything the doctor does. He's going to go forward and be held to a standard of care regardless of his knowledge of this history. There's no relationship between the two things. Now let's go back to 1%. Let's say we have an unreasonably concerned parent, or just a parent who doesn't want to take even a 1% risk. The fact that that 1% risk is there, and certainly there's risk in any situation where someone goes forward with a pregnancy, and doesn't, in this situation, unlike wrongful birth, doesn't decide to exercise the option to terminate. So the parent goes forward in any situation regardless of what the doctor knows to be, or is told, allegedly, to be the reason for the parents wanting to stop off for their pregnancies, it doesn't increase the risk. It's still 1%. So the question that the dissent raised, which I think is an interesting question too, and I'll put it then in a wrongful birth context. The parents come to the doctor and say, we are very concerned about this particular genetic abnormality, only a 1%, one in a million, chance of this ever happening, but tell us. Tell us about this. And they don't. They say, oh, don't worry about it, and they have it. But I think that's a much closer connection. But it doesn't increase the risk. The doctor's conduct doesn't increase the risk. But the doctor's conduct in that situation is to, well, it may be that that's not going to be negligent in that situation. I don't know. It depends what the negligent allegation of wrongdoing is. But in that situation, the doctor is specifically charged with looking, testing, advising for that. And that's not what was involved here. This doctor wasn't asked to advise me as to the chances. This doctor wasn't consulted to help us make an informed decision. Should we have another child? What are the risks? There's nothing like that. And that's the difference between these two cases. So consider the situation that the dissent raised in the Williams Supreme Court case. And that situation that was identified I think is very interesting and I think maybe shows that there's a flaw in the logic of saying that this impacts approximate cause analysis. And that is, what if the parents are very concerned about sickle cell disease and there's a negligent vasectomy or tubal ligation, and then the child winds up with a different birth abnormality? So in that situation, is it any more foreseeable? Is it any more likely that the negligent conduct is related to the damage that's caused? No, it's not. And doesn't it seem arbitrary to say that in that situation, we're going to compensate where somebody has said, this one out of ten chance or one out of however percentage chance, this is what worries me. So please, I'd like a tubal ligation. In that situation, that specific risk comes to light after the tubal ligation fails and there's a pregnancy. But not in the situation where there's a completely different issue. Say the child has some other terrible congenital problem. Why would there be a difference there? I don't think there's a cause. We draw lines all the time. I know. They do. And they drew the line in this case, Your Honors. And I see that there's some glancing at the clock and that my time probably is up. But I'd love to answer any other questions that the Justices have. And they do draw lines, Your Honor. And the Supreme Court drew a line here in Cockrum. Williams, while Justice Miller, I think, raised some interesting questions, I think looking at the body of law, including this Court's opinion in Williams, there's a lot of Williams cases cited here, I think that the answer to the certified question should be no. And I thank you for your consideration. Thank you, Ms. DeGray. Ms. Spearman. Good morning again, Your Honors. May it please the Court. Every pregnancy carries with it the possibility that the child can be born with a genetic disorder. When a physician is aware that the parent seeks sterilization in order to prevent conceiving a child with a genetic disorder and that sterilization procedure is performed negligently, that physician should be held liable for the associated expenses because those damages were entirely foreseeable. Now, would you agree with Mr. Grand that if your clients went to Dr. Rosner and said, we really don't want to have another child with sickle cell disease, and their child was born not with sickle cell disease but muscular dystrophy, that your clients would not have a claim? I agree, Your Honor. This is all about foreseeability, as you said earlier. It's not about the physician increasing the risk of the harm to the parents or increasing the risk that they may have a child with a congenital disorder. It's all about the foreseeability of the issue, and that's what we pled in our complaint that it was foreseeable that the Williams would have a child, potentially would have a child, with sickle cell disease. Thus, we ask this Court to answer the certified question in the affirmative. The issue before this Court is actually the scope of damages available in wrongful pregnancy cases where the child is born with a genetic disorder and the defendant physician was specifically retained to prevent that disorder, and that didn't happen. We believe plaintiffs are entitled to recovery of these damages. Defendants erroneously rely on Williams to say that that case declined to extend damages available in wrongful pregnancy cases. However, in Williams, the Supreme Court did not, as you stated earlier, Your Honor, foreclose recovery of these damages. The Court left that question open as to whether or not parents with a particular need to avoid conceiving a child with a particular genetic disorder who communicates that need to the physician may recover as damages the extraordinary expenses of raising that child in the wake of the unsuccessful procedure. So in your view, is there a level of need below which a court would say, you know what, that's not serious enough? If your clients went to Dr. Rosner and said, we already have a child with juvenile onset diabetes. We don't want to have another child with that disorder. And same set of facts, their child is born with juvenile onset diabetes. It's not curable, at least not now, but it's treatable and manageable. Do they recover the extraordinary costs of having a child with juvenile onset diabetes? Yes, Your Honor. If that particular condition was communicated to the physician and that made it foreseeable that the mother, if she became pregnant, could potentially have a child with juvenile onset diabetes. Is there any level below that where the parent comes and says, you know, I already have a left-handed child and I really don't want another left-handed child because they're so difficult? Right. I mean, is there, defining the contours of this, where do you draw the line? I see where you're going, Your Honor. There has to be a distinction made between physical attributes and a serious medical condition. So the court is astute enough to tell the difference between, you know, whether someone's not happy with left-handedness or not happy with. I don't want another child with asthma. I mean, where, how low do you go with the need? Well, I guess we can't really put a percentage on it. Like in this case, as you said earlier, it's medically recognized that there's a 25% chance that two people with sickle cell trait could have a child with sickle cell disease. However, what we're looking at is whether or not that particular medical disorder or genetic disorder was something that was foreseeable. The foreseeability is what is important here. Whether it's diabetes, whether it's asthma, those are all recognized disorders that, you know, can cause some serious expense when it comes to medications, hospitalizations, admissions, you know, those kind of things. So I think the distinction that the cases have made is you can't, we don't want to allow recovery when there's an issue with, as I said, a physical attribute, shortness, baldness, left-handedness. However, when it's a serious medical disease, like sickle cell disease, who, you know, the patients are in and out of the hospital all the time, like juvenile diabetes, where those patients are on insulin and, you know, they have to eat particular foods and things like that, that if those things are communicated to the physician prior to the sterilization procedure, then that's foreseeable. And that's the way we play it in our complaint, that Dr. Rosner here knew that these clients were both carriers of sickle cell disease, he knew that they had a son that already was afflicted with sickle cell disease, and he also knew that they desired to avoid any more children with sickle cell disease. So it's all about the foreseeability. Well, they were avoiding any more children, period. Correct. And especially any more children with sickle cell disease. Your Honors, the court in Williams, I think, made their intention clear. The court stated four times that in the absence of allegations that the physician knew or should have known of the parent's particular need to avoid conception, that it was reluctant to permit recovery. So the point to be taken from Williams is where the birth of an abnormal child is not reasonably foreseeable, the physician is not held liable because there is no proximate cause. However, the Supreme Court left the door open to the possibility that recovery can be had when a proximate cause is sufficiently established. The circuit court below was correct in deciding that under the facts presented here, the birth of a child with a congenital disorder was a foreseeable consequence of the doctor's negligence. This court should also be guided by the Supreme Court's analysis in Simniac. We've been talking about that case a little bit. In Simniac, the Supreme Court formally recognized the tort of wrongful birth and held that parents may recover the extraordinary expenses, medical and otherwise, associated with the genetic disorder that are necessary to properly manage and treat the congenital disorder. Like Simniac, the parents here were seeking the same result. That was to avoid the birth of a child with a particular disease. In this case, just like in Simniac, the parents communicated their specific need to the defendant doctor. As I said, Dr. Rizer knew they had another child with sickle cell disease, they both had sickle cell trait and they were specifically avoiding having another child with sickle cell disease. Nevertheless, Dr. Rizer performed a faulty tubal ligation and the very result that the parents tried to avoid occurred in this case. And you don't contend or it wouldn't matter what the parents communicated to the doctor in terms of the standard of care. It doesn't increase the standard of care, does it? I agree with you. It does not increase the standard of care. The physician is expected to perform his tubal ligation within the standard of care, regardless of whether he knew, you know, that the parents were seeking to avoid this congenital defect or not. That's, you know, that's the law in this state. Finally, it is settled toward law principles that the defendant is responsible for all the damages that result from, that approximately result from his negligence. The failed tubal ligation was a substantial factor in bringing about the birth of the disabled child. As defendants concede in their brief, Dr. Rizer's negligence in performing the tubal ligation created a condition under which the sickle cell disease, the child with sickle cell disease could be born. Defendants also admit in their brief that Kennedy's condition was determined upon conception, but as the pleadings established and as I submit to you today, that condition was intended to be avoided, but for the negligence of the defendant, it was brought about. In this case, it was clearly foreseeable that the particular result was likely to occur. As plaintiffs alleged, Dr. Rizer knew or should have known that the Williams might have a child afflicted with sickle cell disease, and were aware that the parents had a special need to avoid such an outcome. Defendants should be legally responsible for the damages prayed for, because the child born with sickle cell disease in this case was a natural and probable result of the negligence and could have been anticipated. In wrongful pregnancy claims where the physician services are sought out specifically for the purpose of avoiding a particular genetic disorder, and that genetic disorder in fact occurs, the physician should be responsible just as the physicians are in wrongful birth cases. There's no sound reason to impose an arbitrary limit on wrongful pregnancy damages, just because the negligence involves a sterilization procedure rather than genetic services. To deny the recovery of these damages would severely impair the remedy available to parents who fall victim to defendant's negligence. I want to address just one of the points, at least one of the points that defendant brought up in her argument. My counsel here, opposing counsel, brought up the fact that the difference in the injury between wrongful pregnancy and wrongful birth cases, the injury in wrongful pregnancy and wrongful birth cases is the same. And I think you somewhat alluded to that, is that when the physician is negligent, he interferes with the parent's right to make an informed decision about whether or not to have a child. In the wrongful birth cases, the plaintiff goes to the physician and it could vary whether the person is already expecting or not, but they go to the physician for advice about whether or not this child could end up with a genetic disorder. In this particular wrongful pregnancy case, the plaintiff went to the physician to purposely prevent having a child afflicted with a particular genetic disorder. So for the foregoing reasons, we ask this court to answer yes to the certified question presented. Any further questions, Your Honor? No, thank you very much, Ms. Spiro. And I would just say to both sides, and I know I speak for all the panel members, the briefs were really concise and to the point, and we appreciate that. Ms. DeGrant. Thank you, Your Honor. What I hear from counsel is the conclusion over and over again that the information provided to the doctor somehow increases foreseeability. And I don't think that can be the case. I think that the question of foreseeability has been defined, and the question of proximate cause is defined in case after case as, is it the natural and probable result of the negligent act? Would a reasonably prudent person view the injury that's alleged to be a likely result of the negligent act? And whether somebody says the reason that I would like to have a tubal ligation is because I want to avoid one of the specific many birth defects that can happen, that doesn't impact that analysis. And that is really the important factor that has to be considered in determining whether when the Supreme Court said, well, perhaps if there was a particular need to avoid this specific defect, then maybe that would impact the analysis, but when you take a closer look at it, it does not impact the analysis, Your Honor. And there was argument that I think, frankly, is not supported at all in the case law, that there's some sort of a distinction that for particular categories of physical disabilities, that those would come within this exception that the plaintiffs are asking this court to carve out from Cochram. And from Williams, and I don't know of any case that says that. In fact, I think Williams actually, the Supreme Court's decision actually refutes that view. And, you know, the Supreme Court did raise the question after considering the case before it and saying, well, maybe that would matter, but maybe it wouldn't because maybe any kind of, if we go down this slope, the exception can swallow the rule. And that's really true. So I don't know how that would work in practice to say it has to be a physical disability, I guess, but for mental problems or those kinds of problems, that wouldn't come within this exception. I don't know how this line could possibly be drawn. And it certainly isn't supported in the case law. In fact, I think it's refuted by the case law. Let me also change the facts, the fact pattern, to illustrate our point. What if the need, the particular and burning need of the patient who comes in and says, I would like to have a pertubable ligation, is I cannot afford another child. My particular need is to avoid the economic consequences. Well, so does that mean then that it's foreseeable that if a tubal ligation fails, you have a child, there's going to be economic consequences. Now I get to recover for those damages. I don't think that that's correct. Well, those wouldn't be extraordinary expenses. The courts really have drawn the line between the cost of raising a normal healthy child and the extraordinary expenses associated with raising a child with a genetic disorder or disability. So in your hypothetical, you're really back to the cost of raising a healthy child. Well, which is prohibited, is one of the lines that's drawn. But I'm saying the fact that the point that I'm trying to make by taking this to the nth degree, Your Honor, is that the fact that the doctor is advised, here's the reason why I want to do this, this is my particular need, it just shouldn't impact the analysis. And I think that becomes clear once, you know, as counsel acknowledges, it's not going to change the standard of care, it's not going to change what the doctor does. And I think to blur the lines, as counsel suggests, between the wrongful birth injury and the wrongful pregnancy injury is definitely not permitted by the Supreme Court jurisprudence on this topic. And I ran through that portion of the analysis in the opening part of my argument. But I have to emphasize, the injury is not the same. And that's why the damages that flow from the wrongful birth injury versus the wrongful pregnancy injury are not the same. And this Court, I believe, would be stepping quite a bit away from the established case law if we were to make that determination on the allegations of the complaint that are before the Court within the ambit of the certified question. Thank you very much, Your Honors. I appreciate it, and again, we ask that the Court answer no to the question that's been posed. Mr. Grant, Ms. Spearman, I want to compliment you on your arguments and on your briefs. Mr. Grant, I was somewhat concerned that you accused me of placing restrictions on the amount of time that you had. You are going to get all the process, you and your client, that you are due. But I was impressed by your argument, Counsel. This matter will be taken under advisement.